```
                 UNITED STATES BANKRUPTCY COURT
                FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                          )    Chapter 7
                                )
KEEL ARTHUR PETERSON            )    Bankruptcy No. 04-01178
                                )
     Debtor.                    )
_____)
HABBO G. FOKKENA,               )
U.S. Trustee,                   )
                                )    Adversary No. 05-09091
     Plaintiff,                 )
                                )
vs.                             )
                                )
KEEL ARTHUR PETERSON,           )
                                )
     Defendant.                 )
```

**ORDER RE: COMPLAINT TO REVOKE DISCHARGE**

This matter came before the undersigned on October 4, 2006. Assistant U.S. Trustee Janet G. Reasoner appeared on behalf of Plaintiff, U.S. Trustee Habbo G. Fokkena. Debtor Keel A. Peterson appeared in person with his attorney Peter C. Riley. After the presentation of evidence and argument, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O).

**STATEMENT OF THE CASE**

This is an adversary action by the U.S. Trustee seeking to revoke Debtor's discharge under 11 U.S.C. § 727(d)(1). U.S. Trustee alleges that Debtor concealed or transferred assets of the estate with the intent to hinder, delay or defraud Trustee and creditors. U.S. Trustee also asserts that Debtor knowingly and fraudulently made a false oath or account when he verified the accuracy of his schedules and statement of affairs, as well as when he confirmed that they were correct at the § 341 meeting of creditors. Accordingly, U.S. Trustee requests that the Court revoke Debtor's discharge because it was obtained through fraud.

Debtor asserts that he adequately disclosed the assets of his estate at the § 341 meeting and did not knowingly make a false oath. As for any assets he failed to list on his schedules and statement of affairs, Debtor claims that they are of de minimis value or that his failure to list them was an honest

mistake.  Debtor denies that his omissions were intended to hinder, delay or defraud creditors or U.S. Trustee.

## FINDINGS OF FACT

Debtor was the President and sole shareholder of Keel Electric, Inc. ("Keel Electric"), which was incorporated in 1981 and continued doing business until October 2003.  Keel Electric appears to have been a successful business for Debtor; in recent years, it regularly grossed about $1 million in annual sales.  In addition to his involvement with Keel Electric, Debtor engaged in several other business ventures.

In 1998, Debtor became involved in a restaurant venture known as KJ Dockside, Inc.  The restaurant operated at a great loss.  As a result of his involvement with the failed undertaking, Debtor personally owes $40,000 to the Internal Revenue Service and $38,000 to the Iowa Department of Revenue.  In order to collect these debts, both the IRS and the IDOR began garnishing Debtor's bank accounts and wages.  To avoid garnishment, Debtor began compensating himself through Subchapter S distributions from Keel Electric.  Generally, distributions from an S corporation, other than wages, are not subject to garnishment.  Due to Debtor's actions, the IRS and the IDOR resorted to garnishing Debtor's tax refunds and social security receivables, instead.

Subsequently, a business associate named Bud Ficken asked Debtor to assist him in establishing an industrial parts washing business called Maxi Jet.  Debtor agreed to help Ficken by issuing a corporate guarantee on Maxi Jet's equipment leases with two companies, Texatron Financial, Inc. and Information Leasing Corporation.  Debtor entered into agreements with these companies, obligating Keel Electric to assume liability should Maxi Jet default on the leases.  Thereafter, Maxi Jet defaulted on the leases.  As a result of the default, Texatron Financial obtained a judgment against Keel Electric in Linn County, Iowa for $72,083.02.  Additionally, Information Leasing obtained a judgment against Keel Electric in the state of Ohio for $114,272.33.

By this time, Debtor was close to retirement and appears to have been spending a substantial amount of time in Florida.  Debtor's children, Amy and Paul, had taken over the day-to-day operation of Keel Electric.  When the Maxi Jet judgments were entered against Keel Electric, Amy met with an attorney to discuss the appropriate course of action.  The parties decided to form a new corporation, "Amy and Paul, Inc." which would purchase

all the assets and liabilities of Keel Electric, except for the debt owed on the leasing judgments. The asset purchase was completed in October 2003. A vital aspect of the transaction was that Amy and Paul, Inc. acquire Debtor's master electrician's license. This license was necessary for the operation of the business within the Cedar Rapids area and for health insurance purposes. In order for Amy and Paul, Inc. to use the license, Debtor was required to be an officer of the corporation. Thus, Debtor was elected to the position of vice president of Amy and Paul, Inc.

Amy and Paul, Inc. did not pay wages to Debtor, due to the continuing threat of wage garnishment. Further, Amy and Paul, Inc. had been formed as a Subchapter C corporation, so passthrough distributions were no longer an option for Debtor's compensation. Instead, Amy and Paul decided to compensate Debtor for the use of his electrician's license and for his "consulting services" by issuing him a company car and credit card. Debtor was allowed to charge up to $4,000 per month on company credit for his living expenses.

In addition to his other ventures, Debtor has contributed varying amounts of money over the years to several business associations as somewhat of a "passive investor." For instance, he has had an interest in an entity called Rainy Lake Lodge, LP since the early-1980s. Additionally, Debtor operates a travel website through YTB International, Inc. YTB sells memberships to home-based travel agents who in turn generate commissions by operating individual travel websites. Debtor is also connected with a checking account in the name of Live Wire Trust, which has a balance of about $500.00.

Despite Debtor's diverse investment portfolio and the compensation provided by Amy and Paul, Inc., Debtor's financial affairs continued to worsen, and he eventually filed for Chapter 7 bankruptcy protection.

U.S. Trustee asserts that in filing for bankruptcy, Debtor withheld vital information from his petition and schedules and his discharge was procured by fraud. In his petition, Debtor failed to indicate that he was vice president of Amy and Paul, Inc. Next, when asked to list general intangible assets, including licenses, Debtor failed to list his master electrician's license. Debtor also did not report the health insurance payments furnished by Amy and Paul, Inc. Further, when asked to list property held for another, he did not list the company car in his possession. U.S. Trustee also asserts that payments made on Debtor's company credit card by Amy and Paul,

3

Inc. were actually payments to his creditors.  Accordingly, any such payments over $600 made within 90 days of his bankruptcy filing should have been reported.  U.S. Trustee further alleges that the sale of Keel Electric to Amy and Paul, Inc. was priced far below market-value, and that this was done with the intent to defraud creditors.

   Shortly after Debtor's discharge, Rainy Lake Lodge was sold and Debtor received a check for $4,819.18.  Debtor's interest in this asset was discovered after the case trustee reviewed his 2004 federal income tax return.  Debtor explained that Rainy Lake Lodge had always operated at a loss, and thus he did not list it as an asset on his Chapter 7 filings.  Further, since he had already received his discharge, Debtor thought he was entitled to keep the proceeds from the business's liquidation.  When informed otherwise, Debtor directed that Amy and Paul, Inc. send a check to U.S. Trustee in order to reimburse the estate.

   Debtor also failed to divulge his involvement with YTB Travel.  Debtor claims he did not list his association with YTB because he is not active enough as a travel agent to make a profit from his website; he merely receives discounts on travel.

   Finally, Debtor omitted the Live Wire Trust Fund checking account from his bankruptcy petition.  Debtor stated that he did not list this account because he has never received any proceeds from it and has not had any involvement with the purported trust for many years.

   At trial, U.S. Trustee focused on the transaction between Keel Electric and Amy and Paul, Inc.  Namely, U.S. Trustee contends that Debtor's bankruptcy estate was adversely affected by the transfer of Keel Electric to Amy and Paul, Inc. because the sale was not supported by adequate consideration.  Keel Electric was sold to Amy and Paul, Inc. for a purchase price of about $206,000.00.  However, Amy and Paul, Inc. provided no payment to Keel Electric; rather Amy and Paul, Inc. agreed to assume Keel Electric's outstanding liabilities of about $255,000.00.  From that liability amount, Amy and Paul, Inc. subtracted about $52,000.00 worth of Keel Electric's assets, thus arriving at the $206,000.00 purchase price.  The liability transfer did not include the two Maxi Jet leasing judgments.

   U.S. Trustee offered the testimony of Shannon Shaw, a certified public accountant who is accredited in business valuation.  Mr. Shaw testified about some of the more unusual aspects of the asset transfer.

First, Mr. Shaw stated that he believed Keel Electric understated its annual income by over $100,000 in the sale transaction. He noticed that Keel Electric's balance sheet listed its 2003 income as $1,178,668.00. However, the company's 2003 tax return listed income at $1,070,690.00 – a difference of nearly $107,978.00. Mr. Shaw suggested that this discrepancy might have contributed to the undervaluation of Keel Electric in the sale to Amy and Paul, Inc.

Mr. Shaw also found evidence that led him to believe that Amy and Paul, Inc. received several company cars and some electrical equipment without paying for them in the asset transfer. Mr. Shaw testified that even though Keel Electric had fully depreciated the value of the cars and equipment for tax purposes, they were still valuable on the open market. Accordingly, Amy and Paul, Inc. should have purchased the vehicles and equipment; Keel Electric should not have transferred them free of consideration.

Additionally, Mr. Shaw testified as to the value of Debtor's master electrician's license. To arrive at the fair market value of the license, Shaw calculated the value of all payments made by Amy and Paul, Inc. to Debtor over a period of sixty months. This sum includes Debtor's medical insurance payments, car payments and consulting fee. Based on these payments, Mr. Shaw concluded that the master electrician's license would be worth about $264,919.00 in an arms-length transaction.

Finally, Amy and Paul, Inc.'s Form 8594, which is a tax filing that details the asset transfer to the company from Keel Electric, indicates total consideration for the transaction as $206,315.00. Of that amount, $121,476.00 was for liquid assets and $84,839.00 was for equipment. Mr. Shaw's investigation of the asset transfer led him to believe that a substantial amount of inventory was transferred from Keel Electric to Amy and Paul, Inc. However, Mr. Shaw concluded that Amy and Paul, Inc. did not account for this transfer on its Form 8594; nor did he find any other evidence of payment or consideration for the inventory transfer.

Debtor offered his personal testimony and that of Keel Electric's accountant, Carla Meyers, to respond to some of U.S. Trustee's concerns regarding the sale of Keel Electric to Amy and Paul, Inc. Debtor contends that the sale price for Keel Electric was not below market price.

Ms. Meyers explained the discrepancy in Keel Electric's income as listed on its internal documents and the company's tax

5

return.  She stated that Keel Electric is a cash-basis taxpayer and Mr. Shaw had erroneously applied an accrual-basis analysis when evaluating the company's tax returns.  While the internal documents, which were also used in the sale of the business, included the value of receivables and payables, those amounts are not normally included on a cash-basis tax return.  The internal document Mr. Shaw had analyzed was calculated on an accrual basis, thus accounting for the discrepancy in Keel Electric's earnings.

Ms. Meyers also testified as to the status of the depreciated vehicles and equipment that Mr. Shaw believed had been transferred in the Keel Electric asset sale.  She stated that Amy informed her that the items "had not been around in years" and were no longer in existence.  Ms. Meyers then classified the items as abandoned property with a $0.00 sales price.  This classification is reflected on Keel Electric's 2003 Form 4797 filing.

As to the inventory Mr. Shaw believed Keel Electric had transferred without consideration, Ms. Meyers testified that it was in fact included in the purchase price.  Ms. Meyers directed the Court's attention to Amy and Paul, Inc.'s Form 8594, which lists the assets transferred in the sale of Keel Electric.  Ms. Meyers testified that "Class I" property listed on this form includes liquid assets, as well as inventory; "Class V" property listed on the form includes equipment.  While Mr. Shaw concluded that Class I assets, totaling $121,476.00, did not include inventory, Ms. Meyers stated that inventory was included in the Class I asset category.  The discrepancy, she testified, lies in Mr. Shaw's failure to account for the "business manager liabilities account" in calculating the value of Class I assets.  Ms. Meyers explained that Class I assets, including inventory, actually totaled approximately $193,000.00.  From this amount, about $75,000.00 was deducted to compensate for a business manager liability account kept with Keel Electric's bank.  The business manager liability account is a reserve account that the company was required to keep with its bank.  Keel Electric had a business arrangement with its bank, wherein the bank purchased the company's accounts receivables.  The reserve account was money the bank withdrew from its transactions with Keel Electric to cover the risk of bad debt.  Since this account was inaccessible by Keel Electric, it was deducted from the Class I liquid asset calculation.

Ms. Meyers also testified that in her professional opinion, U.S. Trustee's evidence regarding the fair market value of Debtor's master electrician's license was inaccurate.  Ms. Meyers

stated she found no evidence to support a correlation between payments Debtor would theoretically receive from his children over the period of 60 months and the value of his license in an arms-length transaction.

Debtor testified that he did not purposefully act to mislead his creditors when he filed his Chapter 7 petition and schedules. As to the omissions in filings, Debtor asserts that he was not aware that he had been listed as vice president of Amy and Paul, Inc., and that he never personally signed documents showing that he held that office. Next, Debtor claimed that he did not understand the nature of the term "licenses" when he indicated that he possessed none on his bankruptcy schedule. Debtor also stated that since health insurance is regularly provided by employers, he did not realize it was necessary to disclose the fact that he received payment for his health insurance through Amy and Paul, Inc. Nor did Debtor realize that the company car he drove could be considered property held for another. Further, Debtor asserted that the credit card through which his expenses are paid is in the name of Amy and Paul, Inc. Thus, he did not personally issue any preference payments to his creditors, rather Amy and Paul, Inc. issued payments to the company's creditors.

## CONCLUSIONS OF LAW

The purpose of a discharge in bankruptcy is to "relieve an honest debtor from his financial burdens and to facilitate the debtor's unencumbered 'fresh start.'" In re Kasden, 209 B.R. 239, 241 (B.A.P. 8th Cir. 1997), citing Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934). In limited circumstances the debtor's discharge may be revoked; however, revocation is an extraordinary remedy to be sparingly applied. Kasden, 209 B.R. at 241. Thus, the Bankruptcy Code's denial of discharge provisions are strictly construed in favor of the debtor. In re Korte, 262 B.R. 464, 471 (B.A.P. 8th Cir. 2001).

The grounds for revocation of a discharge are contained in 11 U.S.C. § 727(d)(1). This section of the Bankruptcy Code states in pertinent part:

> (d) On request of the trustee, a creditor or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if –
>
> (1) such discharge was obtained through fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge.

11 U.S.C. § 727(d)(1).

In order to revoke Debtor's discharge under § 727(d)(1), U.S. Trustee must show "fraud in the procurement of the discharge and also that grounds existed which would have prevented the discharge had they been known and presented in time." In re Ratka, 133 B.R. 480, 483 (Bankr. N.D. Iowa 1991). U.S. Trustee must prove each of the required elements by a preponderance of the evidence. In re Sendecky, 283 B.R. 760, 763 (B.A.P. 8th Cir. 2002).

### I. Discharge Obtained Through Fraud

U.S. Trustee alleges two counts of fraud. The first is concealment or transfer of assets of the estate with the intent to hinder, delay or defraud creditors or the trustee under § 727(a)(2). Second, U.S. Trustee alleges that Debtor provided false oath in his schedules, statement of financial affairs, and at the § 341 meeting of creditors under § 727(a)(4).

To succeed under § 727(a)(2)(A), U.S. Trustee must show that Debtor intended to hinder, delay or defraud creditors by transferring, removing, destroying, or concealing his property within one year of the date of the petition filing. See Korte, 262 B.R. at 472. U.S. Trustee must prove substantially similar elements to succeed on a § 727(a)(2)(B) claim, "except that the plaintiff must prove that the debtor transferred or concealed property of the estate after the bankruptcy petition was filed." In re Juehring, 332 B.R. 587, 591 (Bankr. N.D. Iowa 2005).

U.S. Trustee also alleges that Debtor's representations on his Chapter 7 petition and schedules, together with his statements at the § 341 meeting of creditors, constitute false oaths under the provisions of § 727(a)(4). This section of the Code states that a debtor is entitled to discharge unless "the debtor knowingly and fraudulently, in or in connection with the case ... made a false oath or account." 11 U.S.C. § 727(a)(4).

Statements made in schedules and testimony elicited at the § 341 meeting of creditors have the "force and effect of oaths." See Korte, 262 B.R. at 474. A false statement must be "both material and made with intent" in order for such false oath or account to bar discharge. Id. at 474 (citations omitted). The threshold for materiality is fairly low. Id. A statement is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of property. Id.

The question of a debtor's intent under § 727(a)(4) is a matter of fact. In re Olson, 916 F.2d 481, 484 (8th Cir. 1990). Intent can be established by "'circumstantial evidence' [or] 'statements made with reckless indifference to the truth.'" Korte, 262 B.R. at 474. Even an omission of assets with limited value can merit denial of discharge, if done with knowledge and fraudulent intent. See Mertz v. Rott, 955 F.2d 596, 598 (8th Cir. 1992) (debtor's failure to disclose anticipated tax refund in the amount of $1,358 warranted denial of discharge where debtor omitted asset with knowledge and fraudulent intent).

## II.  Trustee Knowledge of Fraud

Section 727(d)(1) provides for the revocation of a debtor's discharge if it was obtained through fraud and "the requesting party did not know of such fraud until after the granting of such discharge." 11 U.S.C. § 727(d)(1)  The burden of proving lack of knowledge as to the debtor's fraudulent actions is on the party requesting revocation. Fed. R. Bankr. P. 4005.

Dismissal of a § 727(d)(1) revocation action "is proper where, before the discharge, [the party requesting revocation] knows facts such that he or she is put on notice of a possible fraud." Mid-Tech Consulting, Inc. v. Swendra, 938 F.2d 885, 888 (8th Cir. 1991).  Thus before the discharge is entered, the trustee and creditors must diligently investigate any possibility of fraud. See Swendra, 938 F.2d at 888.  If the complaining party "could have known of the alleged fraud, they have an affirmative duty to investigate before the discharge is granted or the court will dismiss the motion to revoke discharge." In re Cochard, 177 B.R. 639, 643 (Bankr. E.D. Mo. 1995).

## ANALYSIS

### I.  Fraudulent Transfer or Concealment of Property

The first ground on which the U.S. Trustee requests the Court to revoke Debtor's discharge is § 727(a)(2).  U.S. Trustee relies heavily on the allegations that Debtor concealed the assets of Keel Electric through an insider transfer to his son and daughter, organized under the name Amy and Paul, Inc.

To succeed on a § 727(a)(2)(A) claim, U.S. Trustee must prove the following elements:

(1) the act complained of was done within one year prior to the date of petition filing; (2) the act was

9

  that of the debtor; (3) it consisted of a transfer,
removal, destruction or concealment of the debtor's
property; and (4) it was done with an intent to hinder,
delay, or defraud either a creditor or an officer of
the estate.

In re Juehring, 332 B.R. 587, 591 (Bankr. N.D. Iowa 2005),
quoting Korte, 262 B.R. at 472.

  Debtor transferred the assets of Keel Electric to Amy and Paul, Inc. on October 31, 2003. Debtor filed for Chapter 7 bankruptcy on March 30, 2004. Thus, the act complained of was done within the one year window required under § 727(a)(2)(A). Further, the asset transfer was performed by Debtor and consisted of a transfer of his assets, including his master electrician's license. U.S. Trustee has proven the first three elements of § 727(a)(2) by a preponderance of the evidence.

  Next, U.S. Trustee must establish that Debtor acted with an intent to hinder, delay, or defraud either a creditor or an officer of the estate. U.S. Trustee asserts that the transaction between Keel Electric, Inc. and Amy and Paul, Inc. bears the hallmarks of a fraudulent transaction. U.S. Trustee presented the expert witness testimony of Mr. Shaw to illustrate that the asset transfer was undervalued, and that Keel Electric gave certain assets to Amy and Paul, Inc. free of consideration. The Court finds that Mr. Shaw's testimony was adequately rebutted by the testimony of Debtor's accountant, Ms. Meyers. Though certainly not an arms-length transaction, the asset transfer was supported by adequate consideration for the sale of the business, its inventory and the existing equipment.

  As Ms. Meyers' testified, the discrepancy in Keel Electric's income as listed on its 2003 balance sheet and the company's 2003 tax return is due to differences in cash-basis and accrual-basis accounting. Ms. Meyers also offered credible testimony that negated U.S. Trustee's assertion that equipment and inventory items had been gratuitously transferred in the Keel Electric asset purchase. As Ms. Meyer's indicated, Keel Electric's 2003 Form 4797 and Amy and Paul, Inc.'s Form 8594 corroborate her testimony. Her testimony also cast reasonable doubt on the method by which Mr. Shaw calculated the fair market value of Debtor's master electrician's license.

  Ms. Meyers' statements illustrate that the parties at least attempted to conduct a transparent and fair transfer of assets. U.S. Trustee has not presented sufficient evidence to illustrate that the Keel Electric asset transfer was carried out with the

intent to defraud U.S. Trustee or the creditors of Debtor's Chapter 7 estate. Therefore, U.S. Trustee has failed to prove the required elements of the § 727(a)(2) claim by a preponderance of the evidence.

## II.  False Oath

The second ground on which the U.S. Trustee requests the Court to revoke Debtor's discharge is § 727(a)(4)(A).  To prove false oath, U.S. Trustee must establish that (1) Debtor made a statement under oath; (2) the statement was false; (3) Debtor knew the statement was false; (4) the statement was made with fraudulent intent; and (5) the statement related materially to the bankruptcy case.  See In re Tripp, 224 B.R. 95, 97 (Bankr. N.D. Iowa 1998).

Statements and representations made by Debtor in his schedules have the "force and effect of oaths." Korte, 262 B.R. at 474.  Debtor's schedules and statement of affairs, which were filed with his petition, contained multiple falsehoods.  Debtor omitted the following assets in his petition and schedule of affairs:

1.  Debtor retained an interest in the Rainy Lake Lodge Limited Partnership, for which he subsequently received $4,819.18.

2.  Debtor retained an interest in the Live Wire Trust Bank Account, with a balance in excess of $500.00.

3.  Debtor operated a travel website YTB Travel, through which he was entitled to receive commission and discounts on his travel purchases.

4.  Debtor served as vice president of Amy and Paul, Inc., DBA Keel Electric, Inc.

5.  Debtor possessed a master electrician's license which is required in order to operate an electrical contracting business within the Cedar Rapids area.

6.  Debtor possessed property of another, in that he retained possession and control over a vehicle titled in the name of Amy and Paul, Inc.

The subject matter of Debtor's omissions are material because they relate substantially to his "business transactions or estate [and concern] the discovery of assets, business dealings or the existence and disposition of his property." Korte, 262 B.R. at 474.  Debtor has asserted that several omissions in his bankruptcy filings were de minimus or immaterial.  However, debtors have an "absolute duty to report whatever interests they hold in property, even if they believe

12

their assets are worthless." In re Kasden, 209 B.R. 239, 243-44 (B.A.P. 8th Cir. 1997); see also Dean v. McDow, 299 B.R. 133, 140 (E.D. Va. 2003) (noting lack of "de minimus exception" to Bankruptcy Code's disclosure requirements). The Code requires nothing less than full and complete disclosure of all interests of any kind. See Tripp, 224 B.R. at 98.

The requirement that the debtor has made the false oath "fraudulently" is generally satisfied in one of two ways. First, fraudulent intent may be established by circumstantial evidence, or by inferences drawn from a course of conduct. Korte, 262 B.R. at 472-73. Second, proof of reckless indifference to the truth constitutes the functional equivalent of fraud. In re Bauder, 333 B.R. 828, 830 (B.A.P. 8th Cir. 2005). "Courts are often understanding of a single omission or error resulting from an innocent mistake, but multiple inaccuracies or falsehoods may rise to the level of reckless indifference to the truth, which is the functional equivalent of intent to deceive." In re Geller, 314 B.R. 800, 807 (Bankr. D.N.D. 2004). In this case, the level of Debtor's reckless – perhaps even willful – ignorance regarding his financial affairs is evident in his bankruptcy petition and schedules.

The pinnacle of such conduct, though not the only example, is evidenced by Debtor's testimony that he had no idea he had been elected as the vice president of Amy and Paul, Inc. Debtor's signature appears on a document dated October 31, 2003, which waives notice for the organizational meeting of the board of directors for Amy and Paul, Inc. Plaintiff's Ex. 11. Debtor's signature appears with those of his children, Amy and Paul, one line above the words "[b]eing all the directors of the said corporation." Id. The signature attributed to Debtor on this document bears a striking similarity to the signature appearing on Debtor's bankruptcy petition and schedules. The minutes of the organizational meeting of the board of directors, which also took place on October 31, 2003, indicate that "all members of the Board of Directors were present." Plaintiff's Ex. 10. Shortly thereafter, the meeting minutes state that Debtor was unanimously elected by the board of directors to be vice president of Amy and Paul, Inc. Id. Yet, Debtor failed to make mention of this in his Chapter 7 filings. Further, in his responsive pleadings to the instant adversary action, and in his testimony at trial, Debtor asserted that he did not know that he had been elected to the office of vice president of Amy and Paul, Inc. Such statements must characterized as either intentional misstatements or a reckless disregard for the truth.

The cumulative effect of the errors and omissions in Debtor's petition and schedules "paints an unattractive picture, one of actual dishonesty." In re Olbur, 314 B.R. 732, 745-46 (Bankr. N.D. Ill. 2004). Further, Debtor has shown a predilection towards manipulating the legal system to turn various protective shields into his personal swords. Debtor's contortion of the Internal Revenue Code, which enabled him to use Subchapter S distributions to shield his income from IRS garnishment, is one such example. Debtor's petitions and schedules illustrate that this course of manipulative conduct continued during his bankruptcy proceedings. Again, such behavior is inconsistent with the relief to be afforded the honest debtor.

In any event, Debtor's cavalier disregard for both the serious nature of the information sought and the necessary attention to detail and accuracy in his petition and schedules rises to the level required to infer fraudulent intent. U.S. Trustee has succeeded in proving each of the necessary elements of false oath under § 727(a)(4)(A). Further, U.S. Trustee has carried the burden under § 727(d)(1) of illustrating that his office had no knowledge of the extent of Debtor's omissions, having been misled by Debtor's petition and schedules and by statements Debtor made in the § 341 meeting. Debtor gave the impression that he was coming forward with clean hands, and was somewhat candid about the financial details surrounding the Keel Electric asset transfer. However, he left out important facts, such as his retained interest in Amy and Paul, Inc., that might have alerted the U.S. Trustee to the possibility of fraud.

**WHEREFORE**, U.S. Trustee has satisfied the necessary elements of 11 U.S.C. § 727(d)(1) by a preponderance of evidence. Debtor's discharge was obtained through false oath and the U.S. Trustee did not know of such fraud until after the granting of such discharge.

**FURTHER**, U.S. Trustee's complaint to revoke Debtor's discharge is GRANTED.

DATED AND ENTERED: November 14, 2006

_____
PAUL J. KILBURG
BANKRUPTCY JUDGE